UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Ramon R.C.,[1]

    Petitioner,      Case No. 25-cv-3811 (ECT/LIB)

v.            **REPORT AND RECOMMENDATION**

Samuel J. Olson, et al.,

    Respondents.

Pursuant to a general referral made in accordance with 28 U.S.C. § 636 and Local Rule 72.1, this matter comes before the undersigned United States Magistrate Judge upon Petitioner Ramon R.C.'s Amended Petition for a Writ of Habeas Corpus. [Docket No. 8]. Finding no hearing necessary, the Court issues the present Report and Recommendation.[2]

Petitioner is a citizen of Mexico who has lived in the United States for more than twenty years. Petitioner is married to a United States citizen, and he has one minor daughter who is a United States citizen.

On August 2, 2025, Petitioner was arrested and detained by Immigration and Customs Enforcement officials pursuant to 8 U.S.C. § 1226. Following his arrest, Petitioner requested a bond hearing, but an immigration judge denied Petitioner's request. Although a bond hearing is available under § 1226, the immigration judge—relying on a recent change in the policy of the

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in immigration opinions such as the present Report and Recommendation. See, e.g., Yee S. v. Bondi, No. 25-cv-2782 (JMB/DLM), 2025 WL 2879479, at *1 n.1 (D. Minn. Oct. 9, 2025); Sarail A. v. Bondi, No. 25-cv-2144 (ECT/JFD), 2025 WL 2533673, at *1 n.1 (D. Minn. Sept. 3, 2025). Accordingly, where the Court refers to Petitioner by his name, only his first name and last initial are provided.

[2] Upon review of the present record, the Court finds that a hearing is unnecessary in this action because the relevant facts are not in dispute and because a hearing on the Petitioner's claims would not aid the Court in its consideration of the present Petition. See Wallace v. Lockhart, 701 F.2d 719, 730 (8th Cir. 1983) (observing that dismissal of a "habeas petition without a hearing is proper . . . where the allegations, even if true, fail to state a cognizable constitutional claim, where the relevant facts are not in dispute, or where the dispute can be resolved on the basis of the record").

Bureau of Immigration Affairs—determined that Petitioner's detention was instead governed by 8 U.S.C § 1225, under which no bond hearing is available.

Petitioner now brings the present action seeking a writ of habeas corpus requiring Respondents to provide him with a bond hearing under § 1226(a). Petitioner's challenge presents a straightforward legal issue: Whether a noncitizen who has been continually residing in the United States for more than two decades, upon being arrested pursuant to the authority of § 1226, is subject to the discretionary-detention provisions of § 1226 or the mandatory-detention regime of § 1225. Petitioner argues his detention is governed by § 1226. Respondents counter that Petitioner is subject to mandatory detention under § 1225 because every noncitizen who is unlawfully present in the United States is automatically deemed an "applicant for admission" who is "seeking admission" into the United States and is thus subject to mandatory detention under § 1226.

Petitioner is patently correct. Thus, the undersigned—joining the overwhelming majority of Courts in rejecting Respondents' argument—recommends that the present Petition be granted in part, and Respondents be ordered to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within seven (7) days of any Order adopting this Report and Recommendation.

I. **Background**

Petitioner entered the United States without inspection more than twenty years ago, and he has resided in the United States since that time. (See Amended Petition [Docket No. 8] ¶¶ 18, 45; Respondents' Ex. A [Docket No. 16-1]).[3] During the time he has been residing in the United

---

[3] The precise date on which Petitioner entered the United States is not clear from the record now before the Court. Petitioner's filings, including his Amended Petition, assert that he had been residing in the United States since 2003. (See Amended Petition [Docket No. 8] ¶ 45). The documents submitted by Respondents assert that Petitioner entered the United Staes on July 14, 2001, (See, e.g., Respondents' Ex. A [Docket No. 16-1], and Petitioner does not refute the accuracy of the information contained in those documents. Indeed, Petitioner's reply brief avers that he entered the United States in 2001. (Reply Mem. [Docket No. 18] at 3). The Court need not resolve this conflict as it

2

States Petitioner has not had any relevant contact with immigration authorities until the underlying contact which led to the initiation of this action.

On August 2, 2025, Immigration and Customs Enforcement ("ICE") officers encountered Petitioner in Burnsville, Minnesota, and arrested him. (Amended Petition [Docket No. 8] ¶ 46). The Department of Homeland Security ("DHS") then initiated removal proceedings against Petitioner, and he remains detained at the Sherburne County Jail pending those removal proceedings. (Id. ¶¶ 1, 46). The Notice to Appear provided to Petitioner upon his arrest charged him with being "an alien present in the United States who has not been admitted or paroled" under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act, codified as 8 U.S.C. § 1182(a)(6)(A)(i). (Notice to Appear [Docket No. 16-2]). On August 25, 2025, Petitioner was served with notice of additional charges informing him that he was also being charged as removable under Section 212(a)(7)(A)(i)(I) "as an immigrant who, at the time of application for admission, is not in possession of" valid documentation. (Exhibit C [Docket No. 16-3]).

After being arrested, Petitioner requested a custody redetermination proceeding (often referred to as a bond hearing) to contest his detention. (See Order of Immigration Judge [Docket No. 16-4]). The Immigration Judge denied Petitioner's request for a bond hearing and provided the following explanation:

> Mandatory custody under INA § 235(b)(2)(A) [8 U.S.C. § 1225]. An "alien present in the United Staes who has not been admitted" or "who arrives in the United States," whether or not at a port of entry, is an applicant for admission. INA § 235(a)(1) [8 U.S.C. § 1225]. The Court has jurisdiction to reconsider bond determinations made by the DHS under INA Sec 236 [8 U.S.C. § 1226] but does not have jurisdiction to reconsider bond determination made by the DHS under INA Sec. 235 [8 U.S.C. § 1225]. See 8 CFR Sec. 1003.19(a).

---

has no bearing on this Court's analysis whether Petitioner entered the United States in 2001 or 2003. Moreover, using either date, Petitioner has been residing in the United States for more than twenty years.

3

(Order of Immigration Judge [Docket No. 16-4]).[4] Petitioner filed a motion to reconsider asking the immigration court to reconsider the denial of his request for a bond hearing. (See Order of Immigration Judge [Docket No. 1-12]). On September 8, 2025, Petitioner's request for reconsideration was denied. (Id.). That denial was based on the Immigration Judge's finding that Petitioner "is properly categorized as an applicant for admission, and the [Immigration] Court does not have jurisdiction to release [Petitioner] under INA Section 235(b)(2) [8 U.S.C. § 1225]." (Order of Immigration Judge [Docket No. 1-12]). Petitioner appealed the immigration court's Order to the Bureau of Immigration Appeals ("BIA"); that appeal remains pending.

Petitioner initiated this habeas action on September 30, 2025, by filing his Petition, [Docket No. 1], as well as, a Motion for Temporary Restraining Order and Preliminary Injunction, [Docket No. 2]. Petitioner subsequently filed his operative Amended Petition, [Docket No. 8], and a second Motion for Temporary Restraining Order and Preliminary Injunction, [Docket No. 10]. Petitioner's Motions for Temporary Restraining Order and Preliminary Injunction largely seek the same substantive relief he seeks in his Amended Petition.[5]

On October 15, 2025, Petitioner was provisionally ordered removed to Mexico. (Ligon Dec. [Docket No. 16] ¶ 10; Petitioner's Reply [Docket No. 18] at 3). Petitioner has appealed that

---

[4] The Immigration Judge's Order also provided the alternative finding that Petitioner had failed to meet his burden of demonstrating that he was not a danger to the community. (Id.). However, neither party addresses nor discusses this alternative finding. More importantly, the Immigration Judge appears to have wholly abandoned the alternative finding because the Immigration Judge's Order on Petitioner's later motion to reconsider the prior denial of a bond hearing provides § 1225 as the only basis for denying Petitioner's request for a bond hearing. (Order of Immigration Judge [Docket No. 1-12]).

[5] On October 2, 2025, the Honorable Eric C. Tostrud, United States District Court Judge for the District of Minnesota, denied Petitioner's request for the expedited consideration of this matter. (Order [Docket No. 14]).

4

provisional order of removal to the Board of Immigration Appeals; that appeal remains pending. (Petitioner's Reply [Docket No. 18] at 3).[6]

## II.  Discussion

In the United States, immigration law permits "authorized immigration officials to detain some classes of aliens during the course of certain immigration proceedings." Jennings v. Rodriguez, 583 U.S. 281, 286 (2018). For example, "the Government" is authorized "to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." Id. at 289. Government officials are also authorized "to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." Id. Although both § 1225 and § 1226 authorize the detention of noncitizen individuals during the course of immigration proceedings, those provisions operate in substantially different manners. See Id.

Detention under § 1226(a) is often referred to a discretionary detection.[7] Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." "As long as the detained alien is not covered by § 1226(c), the Attorney General 'may release' the alien on 'bond . . . or conditional parole.' Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." Jennings, 583 U.S. at 306 (citations omitted) (ellipses in original).

Detention under § 1225 is different, and it is often referred to as mandatory detention. Section 1225 applies to "[a]n alien present in the United States who has not been admitted or who arrives in the United States []whether or not at a designated port of arrival," and all such

---

[6] Petitioner's appeal of the removal order automatically stays the execution of the removal order while the appeal is pending. See Silva v. United States, 866 F.3d 938, 939 (8th Cir. 2017).
[7] Section § 1226(c) provides for the detention of noncitizen individuals who are deemed inadmissible or deportable based on said individual having committed or been sentenced to certain criminal offenses. No party here argues that Petitioner is subject to detention under § 1226(c).

5

individuals are deemed for purposes of § 1225 to be "an applicant for admission." § 1225(a)(1). "As relevant here, applicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." Jennings, 583 U.S. at 287. Unlike § 1226, "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings." Id. at 297. "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," and these individuals are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." Id. "Section 1225(b)(2) is broader" operating "as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." Id. Individuals covered by § 1225(b)(2) "'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country." Id. (quoting § 1225(b)(2)(A)) (brackets in Jennings).

In the present proceeding, Petitioner argues that his ongoing detention violates his due process rights as secured by the Fifth Amendment of the United States Constitution. (See Amended Petition [Docket No. 8]). More specifically, Petitioner argues that he is being unconstitutionally deprived of his right to a bond hearing because Respondents have unlawfully subjected him to mandatory detention under § 1225(b)(2), rather than the discretionary detention provisions of § 1226(a). (See Id.). In opposition, Respondents argue that this Court lacks jurisdiction to adjudicate Petitioner's claims and that even if this Court has jurisdiction to consider Petitioner's claims, Petitioner is properly subjected to mandatory detention under § 1225(b)(2).

Respondents are flatly wrong on both counts. The Department of Homeland Security has been repeatedly and continually informed by Court's across the nation that the same arguments

6

they proffer here lack merit. See, e.g., Fuentes v. Olson, No. 25-cv-4456 (LMP/ECW), 2025 WL 3524455, at *1, 3 (D. Minn. Dec. 9, 2025) (collecting cases).[8]

### A. The Court has jurisdiction to adjudicate Petitioner's claims.

"Habeas is at its core a remedy for unlawful executive detention." Munaf v. Geren, 553 U.S. 674, 693 (2008). To ensure that remedy remains available, district courts have been vested with the authority to grant writs of habeas corpus to any individual who demonstrates that they are being subjected to custodial confinement in violation of the Constitution, federal law, or a treaty of the United States. See, e.g., Rasul v. Bush, 542 U.S. 466, 473 (2004); 28 U.S.C. §§ 2241(a), 2241(c)(3). The district court's habeas jurisdiction includes the authority to adjudicate habeas challenges to a noncitizen individual's immigration-related detention. See, e.g., Zadvydas v. Davis, 533 U.S. 678, 687–88 (2001). "Petitioner bears the burden of proving by a preponderance of the evidence that his detention is unlawful." Abel Jimenez Jimenez v. Samuel J. Olson, No. 25-cv-189 (CJW/KEM), 2025 WL 3633609, at *2 (N.D. Iowa Dec. 15, 2025) (citing Aditya W. H. v. Trump, 782 F. Supp. 3d 691, 702 (D. Minn. 2025); Walker v. Johnston, 312 U.S. 275, 286 (1941)).

The habeas power of the district court is not, however, without limits. Regarding challenges in immigration-related matters, Congress has expressly provided that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g).

---

[8] Indeed, Courts across the country have determined that the Department of Homeland Security is not substantially justified in maintaining the same argument Respondents cling to here, and those Courts have awarded attorney's fees and costs to the respective petitioners under the Equal Access to Justice Act. See Barco Mercado v. Francis, No. 25-cv-6582 (LAK), 2025 WL 3295903, at *13 (S.D.N.Y. Nov. 26, 2025); Mairena-Munguia v. Arnott, No. 25-cv-3318 (MDH), 2025 WL 3229132, at *5 (W.D. Mo. Nov. 19, 2025).

7

Respondents in this case argue that § 1252(g) deprives this Court of jurisdiction to adjudicate Petitioner's claim.

Respondents are patently incorrect. The Supreme Court has explained that § 1252(g) "applies only to three discrete actions that the Attorney General may take:" the "'decision or action' to '<u>commence</u> proceedings, <u>adjudicate</u> cases, or <u>execute</u> removal orders.'" <u>Reno v. Am.-Arab Anti-Discrimination Comm.</u>, 525 U.S. 471, 482 (1999) (emphasis in <u>Am.-Arab Anti-Discrimination Comm.</u>); see <u>Jennings</u>, 583 U.S. at 294 (citing <u>Am.-Arab Anti-Discrimination Comm.</u>). "It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." <u>Am.-Arab Anti-Discrimination Comm.</u>, 525 U.S. at 482.

Section § 1252(g) does not deprive this Court of jurisdiction to consider the present habeas petition because Petitioner does not here challenge the Attorney General's decision to commence removal proceedings against him, the Attorney General's adjudication of that removal proceeding, or the execution of any removal order.[9] Instead, Petitioner "challenges the legality of his detention, which is 'independent of, and collateral to, the removal process.'" <u>Fuentes</u>, 2025 WL 3524455, at *3 (quoting <u>Ozturk v. Hyde</u>, 136 F.4th 382, 397 (2d Cir. 2025)); see <u>Maldonado v. Olson</u>, 795 F. Supp. 3d 1134, 1145 (D. Minn. 2025); <u>Kong v. United States</u>, 62 F.4th 608, 609 (1st Cir. 2023). Moreover, the Eighth Circuit has specifically "carved out an exception to § 1252(g) for a habeas claim raising a pure question of law," like the habeas claim Petitioner raises here. <u>Jose J.O.E. v. Bondi</u>, No. 25-cv-3051 (ECT/DJF), 2025 WL 2466670, at *7 (D. Minn. Aug. 27, 2025) (quoting <u>Silva v. United States</u>, 866 F.3d 938, 941 (8th Cir. 2017)).

Nevertheless, despite clear Supreme Court precedent to the contrary, Respondents argue that § 1252(g) precludes the Court "from hearing challenges to the method by which the

---

[9] To be clear, Petitioner is presently not subject to any final order of removal.

government chooses to commence removal proceedings, including the decision to detain an alien pending removal." (Respondent Resp. [Docket No. 17] at 9). Respondents' "method" argument is rejected as directly contrary to long-standing and controlling Supreme Court precedent discussed in the preceding paragraphs. See, e.g., Maldonado, 795 F. Supp. 3d at 1144. The issue raised in the present Petition regarding the constitutionality of Petitioner's continued detention is separate and independent from the Department of Homeland Security's decision to commence removal proceedings against Petitioner. Section 1252(g) does not deprive this Court of jurisdiction to hear Petitioner's challenge to his continued detention.[10]

Having determined that the Court retains the jurisdiction to adjudicate Petitioner's claims, the Court now considers the merits of his Amended Petition.

### B. Petitioner is not subject to mandatory detention under § 1225(b)(2).

Petitioner argues that his present detention is unconstitutional because he is being improperly categorized by the Department of Homeland Security as being detained pursuant to the mandatory-detention provisions of § 1225(b)(2) without the possibility of a bond hearing when he is actually be detained pursuant to the discretionary-detention provisions of § 1226(a) which entitles him to a bond hearing. (See Amended Petition [Docket No. 8]). Respondents do not take issue with the assertion that individuals detained pursuant to § 1226(a) are entitled to a bond hearing. (See Respondents' Mem. [Docket No. 17]). Rather, Respondents argue that

---

[10] Indeed, Respondents' argument to the contrary has been soundly rejected by nearly every Court across the nation which has considered the argument. See, e.g., Fuentes, 2025 WL 3524455, at *3 (collecting cases); Jose J.O.E., 2025 WL 2466670, at *7; Maldonado, 795 F. Supp. 3d at 1144; Salazar Arroyo v. Larose, No. 25-cv-2190 (LL/MMP), 2025 WL 3527149, at *2 (S.D. Cal. Dec. 9, 2025); Coronado v. Secretary, Department of Homeland Security, No. 25-cv-831, 2025 WL 3628229, at *3 (S.D. Ohio Dec. 15, 2025); Hernández Marcelo v. Trump, No. 25-cv-94 (RGE/WPK), 2025 WL 2741230, at *4 (S.D. Iowa Sept. 10, 2025); Patel v. Hardin, No. 25-cv-870 (JES/NPM), 2025 WL 3442706, at *2 (M.D. Fla. Dec. 1, 2025); Alejandro v. Olson, No. 25-cv-2027 (JPH/MKK), 2025 WL 2896348, at *3 (S.D. Ind. Oct. 11, 2025); Chang Barrios v. Shepley, No. 25-cv-406 (JAW), 2025 WL 2772579, at *5 (D. Me. Sept. 29, 2025); Loa Caballero v. Baltazar, No. 25-cv-3120 (NYW), 2025 WL 2977650, at *4 (D. Colo. Oct. 22, 2025); Diaz v. Holt, No. 25-cv-1179, 2025 WL 3478509, at *3 (W.D. Okla. Oct. 30, 2025), report and recommendation, 2025 WL 3296310 (W.D. Okla. Nov. 26, 2025).

9

Petitioner is subject to mandatory detention under § 1225(b)(2) because Petitioner has been "deemed" an "applicant for admission." (See Id. at 11–17).

Respondents' argument mirrors the BIA's decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025), in which the BIA concluded that § 1225(b)(2) applies to all individuals classified as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) for being "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General"—the same provision under which Petitioner is charged.

This Court is not, however, bound by the BIA's decision in Yajure Hurtado, and "[l]ike the vast majority of courts that have addressed the issue, this Court finds that [the BIA's] interpretation is incorrect." Santos M.C. v. Olson, No. 25-cv-4264 (PJS/DJF), 2025 WL 3281787, at *2 (D. Minn. Nov. 25, 2025) (footnotes omitted). Notably, the BIA's decision in Yajure Hurtado regarding the application § 1225(b)(2) departs from decades of consistent statutory interpretation and the text of § 1225(b)(2) itself. See, e.g., Eliseo A.A. v. Olson, No. 25-cv-3381 (JWB/DJF), 2025 WL 2886729, at *4 (D. Minn. Oct. 8, 2025). Yajure Hurtado is thus entitled to no deference from this Court and offers no useful guidance "in determining" the proper interpretation of § 1225(b)(2). See Loper Bright Enters. v. Raimondo, 603 U.S. 369, 394 (2024) (explaining that the usefulness of agency decisions in the Court's interpretation of statutory provisions is reserved for long-standing agency interpretations "which have remained consistent over time"); see Maldonado, 795 F. Supp. 3d at 1150–51.

The question here is simple: "whether [Petitioner]—who has been continuously residing in the United States for two decades—is an 'applicant for admission' who is 'seeking admission.'" Fuentes, 2025 WL 3524455, at *4. The answer is equally as simple: Petitioner—

10

who has been present in the United States for more than two decades and who has not applied for admission into the United States—is not an "application for admission." Fuentes, 2025 WL 3524455, at *4 (collecting cases); see, e.g., Jose J.O.E., 2025 WL 2466670, at *8. Federal courts across the United States, including the overwhelming majority of Courts to consider the issue, have reached this same conclusion and rejected Respondents' argument to the contrary more than 300 separate times. See, e.g., Fuentes, 2025 WL 3524455, at *4 (collecting cases); Barco Mercado v. Francis, No. 25-cv-6582 (LAK), 2025 WL 3295903, at *13 (S.D.N.Y. Nov. 26, 2025). And "every district judge in this District to consider this question on the merits has rejected the Government's argument." Fuentes, 2025 WL 3524455, at *4; see Santos M.C., 2025 WL 3281787, at *3 (Schilz, C.J.); Andres R.E. v. Bondi, No. 25-cv-3946 (NEB/DLM), 2025 WL 3146312, at *3 (D. Minn. Nov. 4, 2025) (Brasel, J.); Belsai D.S. v. Bondi, No. 25-cv-3682 (KMM/EMB), 2025 WL 2802947, at *5 (D. Minn. Oct. 1, 2025) (Menendez, J.); Eliseo A.A., 2025 WL 2886729, at *4 (Blackwell, J); Francisco T. v. Bondi, No. 25-cv-03219 (JMB/DTS), 2025 WL 3236513, at *3 (D. Minn. Nov. 19, 2025) (Bryan, J.); Fuentes, 2025 WL 3524455, at *4 (Provinzino, J.); Avila v. Bondi, No. 25-cv-3741 (JRT/SGE), 2025 WL 2976539, at *6 (D. Minn. Oct. 21, 2025) (Tunheim, J.); E.M. v. Noem, No. 25-cv-3975 (SRN/DTS), 2025 WL 3157839, at *4–6 (D. Minn. Nov. 12, 2025) (Nelson, J.).

There is simply no reasonable basis upon which this Court could conclude that Petitioner—who at the time of his arrest had been in the United States for more than two decades—is an "alien seeking admission" subject to mandatory detention under § 1225(b)(2). "As other courts have observed, the use of the verb 'seeking' in § 1225(b)(2)(A) denotes an active and present effort, such that an alien seeking admission is a noncitizen who, at the time of his arrest, is actively and presently pursuing inspection and authorization by an immigration

11

officer to lawfully enter the United States." E.M., 2025 WL 3157839, at *4 (cleaned up) (quoting Ramirez Valverde v. Olson, No. 25-cv-1502, 2025 WL 3022700, at *3 (E.D. Wis. Oct. 29, 2025)). "'Seek' is an active verb, not a type of status that narrows the meaning of alien to one who is attempting to obtain lawful admission to the United States." E.M., 2025 WL 3157839, at *4 (cleaned up) (quoting J.A.M. v. Streeval, No. 25-cv-342 (CDL), 2025 WL 3050094, at *3 (M.D. Ga. Nov. 1, 2025)). As another Court analogized, "someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as 'seeking admission' to the theater. Rather, that person would be described as already present there." Santos M.C., 2025 WL 3281787, at *3 (quoting Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 489 (S.D.N.Y. 2025)). Furthermore, "[e]ven if that person, after being detected, offered to pay for a ticket, one would not ordinarily describe them as 'seeking admission' (or 'seeking' 'lawful entry') at that point—one would say that they had entered unlawfully but now seek a lawful means of remaining there." Lopez Benitez, 795 F. Supp. 3d at 489.

In summation, Petitioner is not subject to the mandatory detention provisions under § 1225(b)(2). Petitioner's is instead subject § 1226(a)'s discretionary detention scheme. Thus, Petitioner is entitled to a bond hearing. 8 U.S.C. § 1226(a); Jennings, 583 U.S. at 306.

### III. Petitioner has not demonstrated that he is entitled to any relief beyond a bond hearing.

As noted above, the relief sought in Petitioner's Amended Motion for Temporary Restraining Order and Preliminary Injunction, [Docket No. 10], largely mirrors the relief Petitioner seeks through his Amended Petition, to wit, a bond hearing.[11] Thus, the Court's

---

[11] Petitioner's Amended Motion for Temporary Restraining Order and Preliminary Injunction, [Docket No. 10], wholly subsumes his initial Motion for Temporary Restraining Order and Preliminary Injunction, [Docket No. 2],

12

discussion above and the undersigned's recommendation that the Court order Respondents to provide Petitioner with a bond hearing within the specified time largely moots Petitioner's Amended Motion for Temporary Restraining Order and Preliminary Injunction. But a bond hearing may not be the only relief sought in this action.

Although all of Petitioner's arguments are directed at the issue of a bond hearing, both the Amended Petition and the Amended Motion for Temporary Restraining Order and Preliminary Injunction making passing reference to "a writ of habeas corpus requiring that Respondents release Petitioner or provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a)." (Amended Petition [Docket No. 10] at 17). The Court does not view this as a request for release, or in the alternative, a bond hearing. Instead, it appears that Petitioner requests an Order of this Court directed Respondents to provide Petitioner with the opportunity for a bond hearing with Petitioner's immediate release being the consequence if Respondents fail to provide the bond hearing in the time permitted.[12] But, to the extent Petitioner did intend this language as seeking immediate release as a remedy here, he has failed to demonstrate or even argue that his detention is per se illegal, but only "that it is illegal insofar as the Government deprives him of a bond redetermination hearing. To afford complete relief, then, the remedy for that violation is to order the Government to provide [Petitioner] with a bond redetermination hearing." Fuentes, 2025 WL 3524455, at *5.

Petitioner's Amended Motion for Temporary Restraining Order and Preliminary Injunction, [Docket No. 10], also seeks an Order of this Court enjoining Respondents from transferring Petitioner out of the District of Minnesota pending the completion of the present

---

and on that basis the Court recommends that Petitioner's initial Motion for Temporary Restraining Order and Preliminary Injunction, [Docket No. 2], be denied as moot.

[12] This interpretation of Petitioner's request is bolstered by his lack of any argument in support of an Order of this Court requiring his immediate release.

action. (See Proposed Order [Docket No. 12]). The only assertion Petitioner offers in support of this particular request for relief is that his transfers "to a detention facility outside of this District," would cause him to "lose access to his counsel and support network." (Mem. [Docket No. 11]).

Under the specific circumstances and procedural posture of the present case, Petitioner's single assertion here is insufficient to warrant a separate Order enjoining Respondents from transferring Petitioner outside the District of Minnesota pending the resolution of this action. As an initial matter, although Petitioner's counsel asserts that Petitioner's transfer outside this District could result in Petitioner's loss of access to his counsel, there are simply no factual assertions providing any particularity to this general assertion. For example, there is no indication on the record now before the Court why Petitioner would not retain remote access to his counsel through telephonic or video means.[13]

More importantly, even if the Court were to assume that the loss of in-person access to counsel and a support network demonstrated the irreparable harm necessary to support an order enjoin Respondents from transferring Petitioner outside of this District, Petitioner's request for such an Order has been rendered superfluous by the unique circumstances and procedural posture of this case. Through the present Report and Recommendation, the undersigned has recommended that Respondents be ordered to provide Petitioner with a bond hearing within seven days of any Order adopting said recommendation. The adoption of that recommendation

---

[13] Additionally, given the procedural posture of the present case, it appears that even if Petitioner is transferred outside this District before the final resolution of this action, the Court would nevertheless retain jurisdiction over the present matter because Respondents have been served in this action, and Petitioner's potential transfer outside of this District would do nothing to curtail the relief available to him in this matter. See Weeks v. Wyrick, 638 F.2d 690, 692 (8th Cir. 1981); Rosales v. Segal, No. 24-cv-3138 (KMM/JFD), 2025 WL 2109458, at *1 (D. Minn. June 2, 2025) (citing Weeks), report and recommendation adopted, 2025 WL 2108914 (D. Minn. July 28, 2025). The procedure posture of the present action (e.g., Respondents having been served with the Petition and having responded to said Petition) distinguishes this case from the myriad actions in which the Court, during the infancy of the habeas action, enjoined Respondents from transferring the petitioner. See Francisco G. v. Bondi, No. 25-cv-3219 (JMB/DTS) Order [Docket No. 17] (D. Minn. Aug. 29, 2025)

will resolve these proceedings. If the Court were to also recommend here that Respondents be enjoined from transferring Petitioner outside this District pending the resolution of these proceedings, that recommendation and the recommendation for a bond hearing—assuming both were accepted—would be adopted at the same time. Put differently, the Order effecting the injunctive relief Petitioner requests (i.e., enjoining Respondents from transferring Petitioner pending the resolution of these proceedings) would be the same Order which ended the period during which that injunctive relief was in effect (e.g., resolving these proceedings). Such an injunction, if granted, would have no practical effect.

### IV. Conclusion

Therefore, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Ramon R.C.'s Amended Petition for a writ of habeas corpus, [Docket No. 8], be **GRANTED in part**, as set forth herein;

2. Respondent be ordered to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within seven (7) days of any Order adopting the present Report and Recommendation;

3. Petitioner's Amended Petition for a writ of habeas corpus, [Docket No. 8], be **DENIED in part** to the extent it seeks his immediate release;

4. Ramon R.C.'s initial Motion for Temporary Restraining Order and Preliminary Injunction, [Docket No. 2], be **DENIED as moot**;

5. Ramon R.C.'s Amended Motion for Temporary Restraining Order and Preliminary Injunction, [Docket No. 10], be **DENIED in part** to the extent it seeks an Order of this

Court precluding Respondents from transferring Petitioner out of this District during the pendency of this action; and

6. The remainder of Petitioner's Amended Motion for Temporary Restraining Order and Preliminary Injunction, [Docket No. 10], be **DENIED as moot**.

Dated: December 30, 2025                                s/Leo I. Brisbois
                                                        Hon. Leo I. Brisbois
                                                        U.S. MAGISTRATE JUDGE

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "[a] party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition." A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).